UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| DAVID LAWRENCE FEDERER, AS EXECUTOR OF THE ESTATE OF CHRISTINA AUDREY FEDERER, | : : : : | CIVIL ACTION FILE NO. 1:15-CV-04204-TWT |
| Plaintiff, | : : : | |
| vs. | : : | |
| ZURICH AMERICAN INSURANCE COMPANY and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | : : : : | |
| Defendants. | : : | |

_____

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW David Lawrence Federer, as the Executor of the Estate of Christina Audrey Federer, Plaintiff herein, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of this Court, hereby files this Brief in Opposition to Defendants' Motion for Summary Judgment, showing this Court as follows:

# INTRODUCTION

This is a suit on a statutory surety bond issued by Defendant Fidelity Deposit Company of Maryland ("F&D) to American Mortgage Express Corporation ("AMEC"), as a licensing requirement under the Georgia Real Estate Mortgage Act, O.C.G.A. § 7-1-1000 *et seq.* (the "GRMA") (the "Bond"). [Docket # 1-1]; *see also* Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Partial Motion for Summary Judgment ("Plt's Stmt of Mat. Facts") ¶ 1, and Ex. A thereto.  While the Bond was in place, AMEC violated multiple provisions of the GRMA resulting in over $300,000 in damages to Christina Audrey Federer ("Ms. Federer") as judicially determined by the Gwinnett County Superior Court (the "Judgment").  Plt's Stmt of Mat. Facts ¶¶ 5, 7, and 8 and Ex. F thereto.  Because AMEC was out of business and could not satisfy the Judgment, Ms. Federer sought payment from Defendant F&D, and its parent company, Defendant Zurich American Insurance Company ("Zurich") under the Bond.  *Id.* ¶ 9, and Ex. G thereto.  Plaintiff submitted her claim to both Defendant F&D and Defendant Zurich, and Zurich responded on behalf of both Defendants. See Defs' Stmt of Mat. Facts ¶ 18.  Because Defendants failed to perform under the Bond, Plaintiff filed the instant lawsuit in the Gwinnett County Superior Court, which was subsequently removed to this Court by Zurich.  [Docket #1, Docket #1-1].

Pursuant to their summary judgment motion, Defendants categorically deny liability under the Bond. Defendants' motion, in its entirety, must be denied. Most notably, each and every argument in Defendants' motion is based on the false premise that Defendants are not conclusively bound by the Judgment entered against AMEC in the Gwinnett Superior Court. As explained in detail in Plaintiff's Brief in Support of Plaintiff's Motion for Partial Summary Judgment,[1] however, Defendant F&D is indeed conclusively bound by the Judgment, such that this Court need not consider any of Defendants' arguments purporting to attack the Judgment and Defendants' Motion for Summary Judgment must therefore be denied.

## ARGUMENT & CITATION TO AUTHORITY

**I.    The Judgment entered by the Gwinnett Superior Court is conclusively binding on the Defendants.**

O.C.G.A. § 7-1-1003.2 (the "GRMA Bonding Statute"), the language of the Bond itself, and relevant case law analyzing licensing bonds required by statute for the purpose of consumer protection, make clear that a surety is conclusively bound

---

[1] Concurrent with the filing of Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff filed an affirmative Motion for Partial Summary Judgment. The basis for Plaintiff's motion is that Defendants are conclusively bound by the Judgment entered against AMEC by the Gwinnett Superior Court. A determination by this Court to that end requires that Plaintiff's Motion for Partial Summary Judgment be granted, and that Defendants' Motion for Summary Judgment be denied.

by a default judgment against its principal, even where the surety has not had notice or an opportunity to be heard, where neither the statute calling for the bond, nor the language of the bond itself, require the surety to be joined as a party to, or to receive notice of, a suit against the principal based on the principal's violation of a condition of the bond.

    **A.**    **Neither the GRMA Bonding Statute nor the language in the Bond require that the surety be named in or receive notice of the suit against its principal**

        **1.**    **The Court must apply the rules of statutory and contract construction to the GRMA Bonding Statute and to the Bond to determine the obligations of an injured party to collect under the Bond**

            **a. The GRMA Bonding Statute must be strictly construed**

Because the GRMA gives rights not had under common law, the rights and obligations under the Act must be strictly construed. *See Hartford Fire Ins. Co. v. IFreedom Direct Corp.*, 312 Ga.App. 262 (2011). To this end, the Georgia Court of Appeals in *IFreedom* noted:

> It has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, must be limited strictly to the language employed, and not extended beyond the plain and explicit terms in the statute. The legislature is presumed to act with knowledge of this rule of construction, and with that body only lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts.

*Id.* at 264.    Bearing this principle of statutory construction in mind, when considering what an injured party must do in order to pursue damages under a bond issued pursuant to the GRMA, the requirements of the statute are clear: 1) the bond shall run to the state for the benefit of any person damaged by noncompliance of a licensee with the GRMA or with any condition of the bond; 2) the bond shall be conditioned upon the applicant or licensee conducting his or her licensed business in conformity with the GRMA; and 3) any person damaged by noncompliance of a licensee with the GRMA or with any condition of the bond may proceed against the licensee, the surety, or both, to recover damages.

### b.    The Bond must be construed to be consistent with the GRMA Bonding Statute

A bond is a contract and is to be interpreted in accordance with established rules of contract construction.  *See Anderson v. U.S. Fidelity & Guar. Co.,* 267 Ga.App. 624 (2004); *see also United States v. Insurance Company of North America,* 131 F.3d 1037, 1041–42 (D.C.Cir.1997).  In instances where a bond is mandated by statute, the provisions of the statute are to be read into the bond. *Speir v. United States,* 31 App. D.C. 476, 483 (D.C.Cir.1908) (holding that statutory conditions "must be considered as read into and made a part of the bond"); *see also* 72 C.J.S. *Principal and Surety* § 82 at 223 ("The scope of a statutorily required surety bond is determined by the language and purpose of the

bond and the terms of the statute it is given under."). Finally, the Georgia Court of Appeals has acknowledged that where a bond is obtained pursuant to statute, "such statute constitutes a part of the bond as if incorporated in it," such that "whatever is included in the bond which is not thereby required must be read out, and whatever is not expressed and ought to have been incorporated must be read in, so as to conform to the requirements of the law." *Home Indem. Co. v. Battery Machinery Co.*, 109 Ga.App. 322, 326-27 (1964) (rejecting condition of bond requiring 90 days-notice to the principal prior to commencement of an action where bonding statute at issue did not call for such notice stating that said condition "is not authorized by the statute under which and in conformity with which the bond was made. Hence the condition was invalid and was unenforceable.").

In construing the Bond at issue in this case, the Court is constrained to construe the Bond to be consistent with the GRMA Bonding Statute, as strictly construed, and the Court is prohibited from reading conditions into the Bond that are not specifically set forth in the statute itself.[2] Based on this legal foundation, the Bond's clear and unequivocal language demonstrates that 1) F&D, as surety, is firmly bound, jointly and severally with AMEC, unto the State of Georgia for the

---

[2] Notably, the Bond specifically provides that "[t]his obligation is issued under and is governed by O.C.G.A. § 7-1-1003.2 and the obligations of the surety shall be those therein set forth."

use and benefit "of any claimant against the principal or his agents" in the principal amount of $150,000.00; and 2) the condition of the obligation is that AMEC comply with the provisions of the GRMA and pay any all monies that become due and owing any person due to the violation of the GRMA by AMEC. Finally, when read in conjunction with the GRMA Bonding Statute, the injured party, Ms. Federer, was statutorily authorized to proceed against AMEC, or F&D, or both, to recover damages, and was not required to give notice to F&D of her claims against AMEC.

> **2.    The unambiguous language of the GRMA Bonding Statute and of the Bond demonstrate that an injured party is not required to name the surety in a suit for damages, and is not otherwise required to give notice of such a suit to the surety in order to collect on the Bond.**

The GRMA Bonding Statute specifically gives an injured party the right to proceed against the principal *or* the surety to recover damages. O.C.G.A. § 7-1-1003.2 (e). Thus, Ms. Federer was not required to name F&D as a party in the Gwinnett Action. Further, the GRMA Bonding statute does not require the injured party to provide notice to the surety of a claim or action filed against its principal for a violation of the GRMA. Because the GRMA gives rights not had under common law, and therefore "must be limited strictly to the language employed, and not extended beyond the plain and explicit terms in the statute," a notice

requirement cannot be read into the statute. *Hartford Fire Ins. Co. v. IFreedom Direct Corp.*, 312 Ga.App. 262 (2011).

Moreover, the express language of the Bond itself does not require that F&D be named in the underlying lawsuit against the principal for its violations of the GRMA, nor does the Bond require that the injured party give notice to F&D of a claim or action filed against the principal based on a violation of the GRMA. Indeed, because the Bond was issued pursuant to the GRMA Bonding Statute, even if the language of the Bond *did* in fact require an injured party to provide notice to the surety as F&D contends, any such contractual notice requirement would be invalid and unenforceable in any event. *Home Indem. Co. v. Battery Machinery Co.*, 109 Ga.App. 322, 326-27 (1964).

**B.    Case law confirms that where a surety has expressly, or by implication, undertaken to be responsible for the liability of its principal, with no right to be joined in a suit against its principal and with no right to notice of same, a judgment against the principal is binding and conclusive on the surety**

**1.    The case law cited by Defendants is inapplicable to a suit on a bond issued pursuant to the GRMA and is not otherwise persuasive**

Defendants rely on the case of *Escambia Chem. Corp. v. Rocker*, 124 Ga.App. 434 (1971) for their argument that the Judgment against AMEC is not conclusively binding on the Defendants, and that the Judgment only raises a

rebuttable presumption of liability and damages. Notably, the *Escambia* decision was issued more than twenty years *before* the GMRA was even enacted. Moreover, the surety/guarantor relationship at issue in *Escambia* was created by a contract of guaranty, rather than by a corporate surety bond issued as a condition of licensing contained in a statutory scheme enacted, at least in part, for consumer protection.

Most importantly, however, the *Escambia* court explicitly recognized a distinction between "bonds, and in some instances ordinary contracts of guaranty or suretyship, [which] are conditioned to pay the judgment, which makes the judgment conclusive in the absence of fraud, collusion, etc." *Id.* at Note 1. Thus, the *Escambia* decision actually contemplated the difference between the guaranty agreement there, and a bond, like the one *sub judice,* where the language of the bond itself, and here the statute requiring the bond, requires payment of damages where the condition of the bond is violated and causes damages to a third party, and recognized that in the latter instance, the judgment "is conclusive in the absence of fraud, collusion, etc." *Id.*

Defendants' reliance on *Noorani v. Sugarloaf Mills Ltd. P'ship of Georgia,* 308 Ga. App. 800 (2011) is similarly misplaced since the *Noorani* court likewise analyzed a contract of guaranty, not a surety bond tied to a specific statutory

scheme; namely a statutory scheme that *explicitly* does not require the surety to be joined in the suit for damages and does not otherwise require notice to the surety.

Finally, Defendants also rely on *Rouse Const., Inc. v. Transamerica Ins. Co.*, 750 F.2d 1492 (11th Cir. 1985), and *Tally v. Atlanta Nat'l Real Estate Trust,* 146 Ga.App. 585 (1978), two additional opinions issued prior to the enactment of the GRMA, and which have nothing at all to do with a surety bond issued pursuant to a statutory mandate for licensing. *Rouse*, for example, involved the issuance of a subcontractor performance bond required by the subcontract between Rouse and a subcontractor and issued by Transamerica, while the *Tally* decision involved a suit on a contractual guaranty. *Rouse,* 750 F.2d at 585-86; *Tally,* 146 Ga.App. at 1492-93. Neither case involved a statutory scheme enacted for the purpose of consumer protection, like the GRMA, and neither case involved a statutory surety bond required for licensing under such a statute.

Notably, neither the *Rouse* nor the *Tally* court detailed the specific language of the obligation at issue in those decisions, nor did the court in those cases mention or otherwise address whether the surety or guarantor was required to be joined in the original action pursuant to the contract under which the secondary obligation was created, or whether the surety or guarantor was otherwise entitled to notice based on some contractual or statutory authority at issue in those cases. As

noted by the court in *Escambia,* the language of the obligation is important since it is the precise language of the bond (and the bonding statute pursuant to which the bond issued if one exists) that creates the condition of the bond, and which determines whether the surety must be joined in the suit or receive notice of the suit in order to be bound by a judgment against the principal.  Where the bond is conditioned to pay for damages caused by the principal's violation of a condition of the bond, without the surety being joined in the action and without notice to the surety, the judgment is conclusive against the surety in the absence of fraud, collusion, etc.  124 Ga.App. at Note 1.

> **2.      Case law analyzing bonds issued pursuant to state licensing statutes confirm that the surety is conclusively bound by a judgment against its principal where the statute does not require that the surety be joined in a suit against its principal or to receive notice of same**

While there are very few cases construing the GRMA Bonding Statute, a review of relevant case law analyzing statutory bonds issued pursuant to licensing statutes like the GRMA demonstrates that "[w]here the very condition of the bond . . . is that the surety will pay damages that may be awarded in an action brought against the principal, … there is no question as to the conclusiveness, as against the surety, of a judgment against the principal, if binding upon the latter and free from fraud and collusion, assuming, of course, that it is the kind of

judgment contemplated by the surety's undertaking." *Axess Intern., Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935 (9th Cir. 1999).

*Sub judice*, the very condition of the Bond is that F&D "shall pay any and all monies that may become due and owing any person due to a violation" of the GRMA by AMEC. *See* Ex. A to Plt's Stmt of Mat. Facts. The Judgment of the Gwinnett Court conclusively established that AMEC violated the GRMA and that Ms. Federer was damaged as a result thereof in the amount of $322,000. *See* Exs. E and F to Plt's Stmt. Of Mat. Facts. It follows that F&D is contractually bound to pay the full amount of the Bond to Plaintiff, even though F&D was not named as a party to and did not have notice of the Gwinnett Action.

At least one other state has considered the effect on a surety of a default judgment entered against its principal for a violation of a condition of a bond issued pursuant to a mortgage licensing statute. *See Hartford Fire Ins. v. Curtis,* 748 S.E.2d 662 (2013). In *Curtis,* a mortgage lender, Calusa Investments, LLC, obtained a $100,000 mortgage lender bond from Hartford as required under West Virginia's Mortgage Lender, Broker, and Servicer Act. W. Va. Code § 31-17-4. In 2008, the borrower filed suit against Calusa based on Calusa's alleged misrepresentations that caused the borrower to refinance his mortgage on unfavorable terms. *Curtis,* 748 S.E.2d at 665. At the time the suit was filed,

Calusa, like AMEC, had apparently become defunct and failed to respond to the complaint.  Hartford, like F&D herein, was not named in the suit and was not otherwise provided notice of the borrower's lawsuit against its principal. *Id.*

The borrower obtained a default judgment against Calusa in the amount of $99,795.05, plus post-judgment interest, against Calusa.  After Calusa failed to satisfy the judgment, the borrower notified Hartford of his claim against Calusa and requested that Hartford satisfy the judgment pursuant to the mortgage lender bond.  When Hartford failed to pay out on the bond, the borrower amended its complaint to add Hartford as a party defendant. *Id.*  The borrower "then filed a motion for partial summary judgment asking the court to find, as a matter of law, that Hartford was liable for the entirety of the judgment under the terms of the bond that it issued to Calusa." *Id.*

Hartford opposed the motion, arguing that it could not be liable on the bond since "it had not been notified of the action against Calusa and it had been denied an opportunity to present defenses or challenge the amount of damages claimed." *Id.* at 667.  The court looked to the language of the bond, as well of the language of the bonding statute requiring the bond, to determine that Hartford was obligated to satisfy the default judgment against Calusa. *Id.*  The lower court stated:

> [The language of the bond and the bonding statute] clearly establish[] that the condition that the Plaintiffs needed to satisfy in this case is a

judgment against Calusa involving conduct violating the provisions of Article 17, Chapter 31 of the West Virginia Code.  There is no other language to indicate that the Plaintiffs should first be required to try their case against Calusa, determine if Calusa will pay any judgment obtained, and then, upon Calusa's failure to pay such a judgment, try their case a second time against Hartford.

*Id.* at 665-66.  In affirming the lower court's grant of summary judgment, the West Virginia Supreme Court of Appeals agreed.  "[W]e now expressly hold that the surety on a judgment bond is conclusively bound by a default judgment entered against its principal, even when the surety did not have notice of the prior suit against the principal, so long as the judgment is the type of judgment contemplated by the bond and the surety cannot establish collusion or fraud." *Id.* at 675.

An analysis of case law interpreting statutory bonds required under other licensing statutes is also helpful.  For example, in the case of *Massachusetts Bonding & Ins. Co. v. Central Finance Corp.*, 124 Colo. 379 (1951), the Massachusetts Supreme Court considered the effect on a corporate surety of a default judgment entered against the surety's principal, an automobile dealer. *Id.* In that case the Massachusetts Motor Vehicle Act required a dealer to obtain a bond in order to become licensed in the state.  The bond was to be conditioned upon the dealer conducting its business "without fraud or fraudulent representation, and without violation of any of the provisions of this act." *Id.*  In a suit against the

dealer and its surety, a default judgment was entered against the dealer. The court thereafter made oral findings in favor of the plaintiff and against the surety and entered judgment against the surety. *Id.* On appeal, the bonding company argued that "none of the factors necessary to establish the facts of the complaint as against [the dealer] for fraud and misrepresentations were present, testified to, or shown by plaintiff." *Id.* at 382-83.

The Massachusetts Supreme Court found it unnecessary to consider the errors claimed concerning the evidence and the proof, or failure of proof, finding that the default judgment entered against the dealer was a conclusive adjudication as to the matters and allegations properly averred in the complaint. The court stated:

> [The] Motor Vehicle Act provides for a surety bond conditions that said applicant shall conduct his business as a dealer without fraud or fraudulent representation, and without the violation of any of the provisions of this act. The judgment against [the dealer] is conclusive on the allegation of fraud, and the bond here involved provides for indemnity for any and all persons, firms, and corporations for any loss suffered by reason of the fraud or fraudulent representations made, or through the violation of any of the provisions of [the act]. . . . As a result, [w]e see no escape from liability on the part of the bonding company under these circumstances.

*Id*; *see also Southern Ins. Co. v. ADESA Austin*, 239 S.W.3d 423 (2007) (confirming that the surety bond required under Texas law to become a licensed motor vehicle dealer was a judgment bond, such that "[a] default judgment against

the principal is conclusive of the surety's liability, unless there is evidence of fraud, collusion, or that the default judgment altered the terms of the bond.").

Likewise, in *Axess Intern., Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935 (1999), the Ninth Circuit Court of Appeals considered the effect of a default judgment entered against the principal on a bond obtained pursuant to the Shipping Act of 1984, 46 U.S.C. § 1721.  Under the act, the shipper was required to obtain a $50,000 surety bond to cover any damages arising from its transportation-related activities. *See id.* at 937.  There, the injured party obtained a default judgment against the shipper.  The injured party then filed suit against the surety on the bond and the District Court granted summary judgment to the injured party on its claim on the bond.  On appeal, the surety attempted to have the Ninth Circuit "reevaluate" the merits of the default judgment. *Id.* at 940.  In reliance on general principles of suretyship, the court affirmed summary judgment finding that because "the bond was issued by [the surety] specifically to pay any judgment for damages against [the shipper], we are not at liberty to reexamine the [default judgment]." *Id.*

Finally, in *Howze v. Surety Corp. of America,* 584 S.W.2d 263 (1979), the Supreme Court of Texas determined that the bonding requirements under the Texas Mobile Homes Standards Act required a "judgment bond" where the statute did not

require that the surety be joined in the suit against the principal, and the statute did not require that the surety be notified of the suit against the principal. *Id.* at 265. Interestingly, while the *Howze* case was being litigated, the Texas Legislature amended the bonding statute at issue to require notice to the surety, thus changing the nature of the bond required to a "general undertaking bond," rather than a "particular judgment bond." *Id.* Notwithstanding, prior to the amendment, the bonding statute in effect at the time of the injury involved in *Howze*, and the bond obtained pursuant thereto, could only be construed as a judgment bond since it specifically did not require that the surety to be joined in the suit against the principal, and did not require that the surety be notified of same. *Id.* As a result, the surety was conclusively bound by the default judgment entered against its principal, notwithstanding that the surety was not named in and did not have notice of the suit filed against the principal wherein the default judgment was entered. *Id.* at 265.[3]

---

[3] The GRMA Bonding Statute must be strictly construed to require a judgment bond since the statute does not require notice to the surety, and *specifically* does not require that the surety be joined in an action against the principal for violations of the GRMA. It is the duty of the courts to interpret the laws as they are written. *See You v. JP Morgan Chase Bank,* 293 Ga. 67 (2013). Thus, like in *Howze,* if the GRMA Bonding Statute is to be modified or reformed to require notice to the surety, or to require that the surety be joined in an action against the principal to establish a violation of the GRMA, that is for the legislature to determine and not for the courts.

## II.   Defendants are precluded from collaterally attacking the Judgment issued by the Gwinnett Superior Court in this Court

In their Motion for Summary Judgment, Defendants argue that they should be permitted to assert defenses that AMEC could have raised in the Gwinnett Action had AMEC not defaulted in that court.  In doing so, Defendants essentially argue that the Gwinnett court erred in entering Judgment against AMEC.  Because the Judgment is conclusively binding on Defendants, however, Defendants' efforts in this regard amount to a collateral attack on the Judgment of the Gwinnett Superior Court.

O.C.G.A.  § 9-11-40 provides:   "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."  *Id.*  Here, because the GRMA Bonding Statute does not require that the surety be joined as a party to a suit against the principal for a violation of the bond, or that the surety receive notice of such a suit, a judgment against the principal is conclusive, not only against the principal, but also against the principal's "privies," the surety who issued the bond.   In other words, the Judgment in this case is binding against both AMEC and the Defendants, "until the judgment is reversed or set aside." *Id.*

O.C.G.A. § 9-11-60 governs relief from judgments entered by a State or Superior Courts in the State of Georgia.  Section (b) of this statute makes clear that "Judgments may be attacked by motion only in the court of rendition."  Further, the only judgment that may be collaterally attacked is a judgment that is "void on its face."  *Id.* (a).  For purposes of this code section, a judgment "void on its face" means a judgment rendered by a court that lacked personal or subject matter jurisdiction.  *Kent v. White,* 266 Ga.App. 822 (2004).  This means that where the court issuing the judgment had personal jurisdiction over the parties, and subject matter jurisdiction over the matters at issue, the judgment is not subject to collateral attack.  The statute is clear: "[I]n all other instances, judgments shall be subject to attack only by a direct proceeding brought for that purpose in one of the methods prescribed in this code section."  O.C.G.A. § 9-11-60 (a).

Here, Defendants do not claim that the Judgment is void on its face; accordingly, Defendants are precluded from attacking the Judgment entered by the Gwinnett Superior Court here, in this Court. [4]  Based on the unequivocal language

---

[4] It is worth noting that Plaintiff filed this case in the Gwinnett Superior Court, and this case was assigned to Judge Tom Davis, the same Superior Court Judge who presided over the Gwinnett Action, and the same judge who heard evidence of damages, and entered the very Judgment that Defendants purport to attack in this Court.  While Defendants were certainly entitled to remove this case to federal court based on diversity of the parties, the irony is not lost on Plaintiff that Defendants now attempt to collaterally attack the Judgment in Federal District

of the statute, this court "lacks jurisdiction" over Defendants' attempted defense purporting to collaterally attack the Judgment, which is not otherwise void on its face. *State Auto Mut. Ins. Co. v. Relocation, etc.*, 287 Ga.App. 575 (2007).

Defendants are also precluded from attacking the Judgment based on the doctrine of collateral estoppel. *See Coffee Iron works v. Qore, Inc.*, 322 Ga.App. 137 (2013). "[C]ollateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Id.* at 139. Moreover, "collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment." *AAB v. James Brown Enterprises, Inc.*, 263 Ga.App. 388 (2003). Finally, in order to properly invoke the doctrine of collateral estoppel, "the judgment must be on the merits," and Georgia courts have determined that a default judgment satisfies this requirement. *Spooner v. Deere Credit, Inc.*, 244 Ga. App. 681 (2000).

With this backdrop, it is clear that the Gwinnett Court conclusively determined that AMEC violated the GRMA and that Ms. Federer suffered damages as a result thereof in the amount of $322,000. *See* Exhibits "E" and "F" to Plaintiff's Statement of Material Facts Not In Dispute. Further, although

---

Court, rather than in the very court (and in front of the same Judge) who entered the Judgment.

Defendants were not named as parties to the Gwinnett Action, the GRMA Bonding Statute specifically did not require the surety to be named as a party to the Gwinnett Action, and the language of the Bond did not require that Defendants be named or be provided with notice of the Gwinnett Action. Based on the analysis set forth in Plaintiff's Brief in Support of Motion for Partial Summary Judgment, and the analysis set forth *supra* at section I herein, however, Defendants are nevertheless "privies" of AMEC for purposes of collateral estoppel. As a result, the doctrine of collateral estoppel bars Defendants from relitigating AMEC's liability to Ms. Federer under the GRMA or the amount of damages suffered by Ms. Federer as a result thereof, in this action.

III.   **Because the Judgment is conclusively binding on Defendants, the Court is not required to consider Defendants' arguments that purport to attack the Judgment**

Each of the arguments set forth in section "B" of Defendants' Brief In Support of Motion for Summary Judgment seek to attack the Judgment entered against AMEC. Because the Judgment is conclusively binding on Defendants, each of Defendants' arguments attacking the Judgment underlying Judgment against AMEC, amount to an impermissible attempt to collaterally attack the Judgment.

Defendants argue that the Gwinnett Action was barred by the doctrine of *res judicata*. Defendants argue that the federal suit filed by Ms. Federer, 1:12-CV-02492-TWT (the "Discrimination Suit"), where Ms. Federer raised discrimination claims under the Equal Credit Opportunity Act, and under the Fair Housing Act, barred Ms. Federer's brining of the Gwinnett Action. Without getting into the merits of the *res judicata* doctrine that Defendants cannot meet based on the facts here, such as identity of the parties and subject matter between the two suits, there is no question that the *res judicata* argument is an impermissible attempt to collaterally attack the Judgment.

Defendants also argue that the Gwinnett Action is an impermissible "shotgun pleading" containing allegations that are not well pled, invalidating the binding effect of the Judgment. There is no question that Defendants' arguments in this respect are an impermissible collateral attack on the Judgment. For example, Defendants essentially argue that the Gwinnett Court should not have entered the Judgment simply because AMEC "failed to appear." Defendants contend that the Gwinnett Court was required to, and did not, pierce the pleadings to determine that the Gwinnett Action "failed to state a claim," and that the Gwinnett Court should have *sua sponte* required Ms. Federer to file a more definite statement. Because the Judgment against AMEC is conclusively binding on

Defendants, Defendants attempts to collaterally attack the Judgment should not be countenanced by this Court.

Moreover, because this Court is precluded from considering Defendants' collateral attack on the Judgment, this Court should not consider Defendants' arguments that Ms. Federer's claims in the Gwinnett Action are barred because she failed to exercise ordinary care, or the Defendants' statute of limitations argument,[5] both of which seek to pierce the final judgment entered by the Gwinnett Superior Court. Simply put, the Judgment of the Gwinnett Superior Court, which was later reduced to a Writ of Fi Fa and recorded in the Gwinnett Superior Court, is conclusively binding on Defendants until it is reversed or set aside by the court of rendition, the Gwinnett Superior Court.

---

[5] Plaintiff's position is that the Judgment is conclusive as to Defendants such that the Judgment cannot be collaterally attacked by Defendants for any purpose. Nevertheless, if the Court determines that the Judgment is subject to collateral attack in this Court, the question of whether Ms. Federer exercised ordinary care and diligence "in making independent verification of contractual terms and representations" or in discovering any fraud on the part of AMEC, involves issues of fact that must be explored during discovery. In this case, the parties' competing dispositive motions were filed before the parties exchanged any documents or completed any discovery, such that to the extent the Court determines that the issue of whether Ms. Federer exercised ordinary care and diligence is material to the Court's determination of summary judgment, the parties should be required to exchange mandatory disclosures and to engage in limited discovery in advance of any summary judgment ruling.

Finally, there is nothing in the record to suggest that Ms. Federer's actions altered Defendants' risk under the Bond.  As discussed *supra* at Section I, neither the GRMA Bonding Statute, nor the Bond itself, required Ms. Federer to name the surety in the Gwinnett Action against AMEC or to otherwise provide Defendants with notice of the lawsuit.  It follows that Defendant F&D was well aware of its risk when it issued the Bond to AMEC and Ms. Federer could not have altered F&D's risk by complying with her obligations as an injured party under the GRMA Bonding Statute and under the Bond to recover for injuries she suffered as a result of AMEC's violation of the GRMA.

Finally, Defendants last argument that Ms. Federer has not proven that AMEC violated the GRMA or that she suffered damages as a result thereof, is belied by the Gwinnett Court's Order on Liability and the Judgment, both of which are conclusively binding on both AMEC and on Defendants herein.  Defendants simply cannot escape the final judicial determination of the Gwinnett Court and Defendants' attempt to collaterally attack the Judgment is impermissible under the GRMA Bonding Statute, the language of the Bond and under O.C.G.A. §§ 9-11-40 and 9-11-60.

## CONCLUSION

For the reasons set forth herein, and in Plaintiff's Brief in Support of Motion for Partial Summary Judgment, Defendants' Motion for Summary Judgment should be denied, and Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully submitted this 28th day of March, 2016.

ANDERSEN, TATE & CARR, P.C.

/s/ Elizabeth Clack-Freeman
R. Matthew Reeves
Georgia Bar No. 598808
mreeves@atclawfirm.com
Elizabeth Clack-Freeman
Georgia Bar No. 126888
lcfreeman@atclawfirm.com
Melody A. Glouton
Georgia Bar No. 297506
mglouton@atclawfirm.com
Attorneys for Plaintiff

One Sugarloaf Centre
1960 Satellite Blvd., Suite 4000
Duluth, Georgia  30097
770.822.0900
770.822.9680 fax

**<u>LR 7.1 D CERTIFICATION</u>**

This is to certify that the within and foregoing has been prepared with one of

the font and point selections approved by the Court in LR 5.1C:  Times New Roman

14 point.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID LAWRENCE FEDERER,        :
AS EXECUTOR OF THE             :
ESTATE OF CHRISTINA AUDREY     : CIVIL ACTION
FEDERER,                       : FILE NO. 1:15-CV-04204-TWT
                               :
        Plaintiff,             :
                               :
vs.                            :
                               :
ZURICH AMERICAN INSURANCE      :
COMPANY and FIDELITY AND       :
DEPOSIT COMPANY OF MARYLAND,   :
                               :
        Defendants.            :

_____

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day presented the foregoing **Plaintiff's**

**Brief in Opposition to Defendants' Motion for Summary Judgment** to the

Clerk of Court for filing and uploading to the CM/ECF system, which will send

notice to the counsel of record listed below:

> Zack Anderson, Esq.
> Mills Paskert Divers
> One Atlantic Center
> 1201 West Peachtree Street
> Suite 2610
> Atlanta, Georgia 30309

> Dated: March 28th, 2016.

By: */s/ Elizabeth L. Clack-Freeman*
Elizabeth L. Clack-Freeman
State Bar No. 126888