UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DAVID LAWRENCE FEDERER, AS EXECUTOR OF THE ESTATE OF CHRISTINA AUDREY FEDERER, <br><br> Plaintiff, <br><br> vs. <br><br> ZURICH AMERICAN INSURANCE COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND <br><br> Defendants. | : <br> : <br> : CIVIL ACTION <br> : FILE NO. 1:15-CV-04204-TWT <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, by and through his undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1 (c), herby submits Plaintiff's Reply Brief in Support of his Motion for Partial Summary Judgment, showing this Court as follows:

### INTRODUCTION

Plaintiff is entitled to judgment as a matter of law on his claim under the Bond at issue in this case. By way of the Order as to Liability and the Judgment

entered by the Gwinnett Court, the Gwinnett Court conclusively established that $332,000 is due and owing to Ms. Federer as a result of AMEC's violations of the GRMA. The GRMA Bonding Statute and the Bond did not require Ms. Federer to give notice to the surety, here F&D, of her claim under the Bond. Further, the GRMA Bonding Statute specifically authorized Ms. Federer to pursue AMEC, F&D, or both, for her damages under the Bond. As a result, when presented with the Judgment issued by the Gwinnett Court, F&D was both statutorily and contractually required to pay out the full amount of the Bond to Ms. Federer. Defendants' attempts to read a notice requirement into the GRMA Bonding Statute and into the Bond itself is prohibited by Georgia law. Further, Defendants' insistence that this Court "read-out" the GRMA Bonding Statute's provision permitting the injured party to pursue only the principal is likewise prohibited under Georgia law. As a result, this Court can reach only one conclusion: F&D is conclusively bound by the Judgment entered against AMEC in the Gwinnett Court and F&D is required to pay out the full amount of the Bond as a matter of law.

## ARGUMENT & CITATION TO AUTHORITY

**I.  The GRMA Bonding Statute and the language in the Bond establish the parameters for this Court's summary judgment analysis**

As set forth in Plaintiff's Brief in Support of Summary Judgment, Georgia law mandates that the Court's resolution of this case begin with the language of the

bonding statute at issue – here the GRMA Bonding Statute, O.C.G.A. § 7-1-1003.2. Moreover, as Defendants concede on page 9 of their response brief,[1] the GRMA, including the requirements of the GRMA Bonding Statute, must be strictly construed:

> It has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, must be limited strictly to the language employed, and not extended beyond the plain and explicit terms in the statute.

*Hartford Fire Ins. Co. v. IFreedom Direct Corp.*, 312 Ga.App. 262 (2011). When strictly construing the requirements of the GRMA Bonding Statute, "[t]h[is] [C]ourt's inquiry is . . . initially limited to determining [the] statute's plain meaning. If the statute's plain meaning is clear, the court is bound to give effect to its language." *Hawkins v. Cottrell, Inc.*, 785 F.Supp.2d 1361 (N.D. Ga. 2011).

As a condition of licensure, and in compliance with the GRMA Bonding Statute, AMEC obtained the Bond from F&D that is the subject of this litigation. Plt's Stmt. Of Mat. Facts ¶ 1. The Bond provides that "this obligation is issued under and is governed by O.C.G.A. § 7-1-1003.2 and the obligations of the surety shall be those therein set forth." *Id.* Thus, F&D's obligations as the surety of

---

[1] "Defendants completely agree that Georgia law requires that [the] GRMA be strictly construed and that the Defendants' obligations under the Bond must be strictly limited to the language in the bond statute." *Id.* at 9.

AMEC are specifically governed by the GRMA Bonding Statute and the Bond. The condition of the Bond is as follows:

> [I]f the principal obligor shall comply with the provisions of [the GRMA] ... and shall pay any and all monies that may become due and owing ... any person due to the violation of any such laws and regulations by the principal through its own acts or the acts of any agent of the principal, then this obligation will be void. Otherwise the same will remain in full force and effect.

*Id.* The condition of the Bond as quoted herein is wholly consistent with the requirements of the GRMA Bonding Statute. Further, although the Bond is silent as to whether the injured party may pursue the principal, the surety, or both, to recover damages, because the GRMA Bonding Statute specifically speaks to this issue, this language must be read into the Bond itself. *See Lord v. Lowe*, 318 Ga.App. 222 (2012). Indeed, where a bond is given under the authority of a statute, "such statute constitutes a part of the bond as if incorporated in it. ... Whatever is included in the bond, and is not required by [the statute], must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it." *Id.* at 225. This is the "read in/read out" rule which the Court must apply when construing statutory bonds.

Here, not only would Defendants have this Court ignore the GRMA Bonding Statute's language authorizing the injured party to *only* pursue the principal, Defendants actually demand that this Court read into the Bond

affirmative requirements that 1) the injured party give notice to the surety, and that 2) the injured party pursue the surety, in order to recover damages. Defendants' position is exemplified in this statement from page 6 of their response brief: "[A] default judgment against a principal is <u>not</u> conclusively binding on the surety, particularly where the surety was unaware of the lawsuit in which the default judgment was obtained and had no meaningful opportunity to be heard in that action." Thus, even though the GRMA Bonding Statute specifically does not require the injured party to give notice to the surety, and even though the GRMA Bonding Statute specifically permits the injured party to pursue only the principal in a suit for damages, Defendants insist that in order for the Judgment against AMEC to be binding on F&D, this Court must read those non-existent requirements into the Bond.

Defendants' position is contrary to the clear language of the GRMA Bonding Statute and the Bond, and is at odds with well-established Georgia law. In other words, in order to find that the Judgment obtained against AMEC is not binding on F&D, this Court would have to read into the GRMA Bonding Statute and into the Bond itself, affirmative requirements that do not exist, something this Court is prohibited from doing under existing Georgia law. Indeed, Georgia law mandates that this Court strictly construe the GRMA Bonding Statute, and

prohibits this Court from reading into the Bond any additional requirements not contained in the statute.

## II. Bonds issued pursuant to a statutory mandate require a different analysis than common law bonds

In their responsive brief, Defendants wholly rely on inapplicable contractual guaranty cases and therefore fail to even address the GRMA or the bonding statute contained therein. Moreover, Defendants do not address or discuss the language in either the GRMA Bonding Statute or in the Bond at all. Instead, Defendants urge this Court to ignore the GRMA and the Bond and to look to Georgia common law to dispose of this case. The fallacy in Defendants' position is most evident in their misguided argument on page 17 of their brief that the dispositive issue is not whether the Bond was issued pursuant to a statutory mandate.

As explained in Section I herein, in order for this Court to properly construe the Bond, it is essential and imperative that this Court first recognize that the Bond was issued pursuant to a statutory mandate, here, O.C.G.A. § 7-1-1003.2. As a result, the obligations created in the Bond must be construed pursuant to the dictates set out in Section I herein, which requires strict construction of the statute, followed by construction of the Bond under the dictates of the read in/read out rule. *Hawkins v. Cottrell, Inc.*, 785 F.Supp.2d 1361 (N.D. Ga. 2011) ("A court is permitted to look beyond the plain meaning of a statute to extrinsic materials in

only two circumstances: (1) the statute's language is ambiguous; or (2) applying the statute's plain meaning would lead to an absurd result. . . ."). The Bond here is consistent with the GRMA Bonding Statute and does not attempt to extend or restrict the requirements set forth in the statute. Under the clear and unambiguous language of the Bond, the surety agreed to pay any and all monies that became due and owing any person due to the principal's violation of the GRMA. As a result, once an injured party establishes that monies are due and owing to it because of a principal's violation of the GRMA, the surety is unconditionally bound to pay those amounts up to the amount of the Bond.

Defendants place complete reliance upon the Georgia Court of Appeal's decision in *Escambia Chem. Corp. v. Rocker*, 124 Ga.App. 434 (1971), to support their position that Defendants are not conclusively bound by the default judgment entered against AMEC.[2] The obligation at issue in *Escambia* was a contract of

---

[2] Even if the common law principles in *Escambia* were controlling *sub judice*, which they are not, *Escambia* makes clear that a default judgment "establish[es] prima facie that the creditor has a valid claim against the debtor for the amount of the judgment." *Id.* at 438. The burden is then on the "surety or guarantor to introduce evidence sufficient to rebut the correctness of the judgment." *Id.* Here, Plaintiff presented this Court with proper proof of the Judgment in favor of Ms. Federer, in the form of the Gwinnett Complaint (including the portions of the GRMA judicially determined to have been violated by AMEC), the Order as to Liability and the Judgment. Plt's Stmt. Of Mat. Facts ¶¶ 1 – 8. Defendants presented no evidence to rebut the correctness of the Judgment. Because Defendants failed "to carry [their] burden of introducing evidence sufficient to

guaranty executed by Hattaway in favor of Escambia, intended to induce Escambia to extend credit to Hattaway's company. Notably, *Escambia* did not involve a bond issued pursuant to statute. Predictably then, the *Escambia* decision did not mention the requirement of strict construction of statutory bonding statutes or the read in/read out rule required to be followed when construing bonds issued pursuant thereto. The same is true for the *Noorani v. Sugarloaf Mills Ltd. P'ship of Georgia* decision, the other guarantor case relied upon by Defendants, which involved a guaranty executed in conjunction with a lease. 308 Ga.App. 800 (2011).

### III. Summary Judgment in favor of Plaintiff on his claim on the Bond will not disturb or impact Georgia principles of common law set forth in the cases cited by Defendants

If the underlying obligation here was not created pursuant to a statutory mandate, Defendants' arguments would be less unsettling. *See Lord v. Lowe*, 318 Ga.App. 222, 227 (2012) (distinguishing between common law bonds and statutory bonds). However, because the Bond here was issued pursuant to a statutory mandate, Defendants' insistence that this Court apply common law principles when construing the Bond is contrary to well-established Georgia law. That is why a ruling in favor of Plaintiff in this case will not disturb or impact the common

---

rebut the correctness of the judgment against [AMEC]," summary judgment against F&D for the amount of the Judgment is demanded. *Id.* at 439.

law principles set forth in the Court of Appeal's decisions in *Escambia* or *Noorani* -- these decisions did not involve a bond issued pursuant to a statutory mandate.

The Texas Supreme Court's decision in *Howze v. Surety Corp. of America*, 584 S.W.2d 263 (1979) is instructive on this point. In *Howze*, after analyzing the language of both the statute mandating the bond and the bond itself, and concluding that the surety was bound by the default judgment entered against its principal even though the surety had not received notice, the court succinctly explained why its decision did not create a broad rule applicable to all default judgment cases. *Id.* at 266. The court explained:

> Since this bond is a statutory bond, this Court does not need to announce a general rule applicable to all cases where a creditor obtains a default judgment against the principal and attempts to introduce the judgment against the surety. The terms of this Act (and subsequently of the bond) condition the liability of a mobile home surety upon the establishment of liability against the principal; *i.e.*, upon a judgment. Therefore, under the provisions of this Act, a judgment which establishes liability against the principal resulting from a cause of action connected with the sale or lease of a mobile home is binding upon the surety, absent proof of fraud or collusion. There was none here.

*Id.* The same is true *sub judice*. A ruling in favor of Plaintiff will simply confirm that pursuant to the GRMA Bonding Statute, an injured party may pursue the principal for damages incurred because of the principal's violation of the GRMA, and that once the injured party proves that monies are due and owing to him as a

result of a violation of the GRMA, he may collect under the bond from the surety, even where the surety did not have notice of a claim on the bond, and even where the surety was not named in the suit against the principal.

**IV. The language of the GRMA Bonding Statute and the Bond demonstrate that Plaintiff is entitled to judgment as a matter of law**

Defendants argue that F&D is not bound by Plaintiff's judgment against its principal because neither the GRMA Bonding Statute nor the Bond contain the term "judgment." Moreover, Defendants insist that Plaintiff is asking this Court to read in an obligation for the surety to pay a judgment when the term "judgment" does not appear in the GRMA or in the Bond. Defendants' characterization of Plaintiff's argument is erroneous.

As set forth in Sections I and II herein, there is no need for this Court to read the term "judgment" into the GRMA Bonding Statute or into the Bond in order for the Court to determine that Plaintiff is entitled to judgment as a matter of law against F&D under the Bond. All this Court need do is strictly construe the GRMA Bonding Statute and apply the language of the Bond as written: The surety is required to pay "any monies due and owing ... any person due to a violation of the [GRMA]."

The Texas Supreme Court's decision is *Howze* is also instructive on this point. 584 S.W.2d 263 (1979). Like the Court here, the court in *Howze* considered

whether a default judgment obtained against a principal was conclusively binding on a surety who did not have notice of the injured party's claim under the bond prior to entry of the default judgment. Like the Bond *sub judice*, the bond in *Howze* was issued pursuant to a statutory mandate, and neither the statute nor the bond required that the surety receive notice of a claim on the bond, or be joined in a suit for damages under the bond.³ Moreover, the bond in *Howze* required the surety to pay out under the bond to any consumer "who establishes liability against a dealer for damages . . ." *Id.* at 265.

The Texas Supreme Court found the language of the bonding statute and the bond itself dispositive of whether the default judgment was conclusively binding on the surety. The lower court determined that the surety could not be held liable under the bond because neither the bonding statute nor the bond used the term

---

³ On page 10 of their responsive brief, Defendants opine that "Plaintiff has cited no law (Georgia or otherwise) holding that a statute's silence as to a notice requirement and provision of the claimant's option to proceed against the surety, principal, or both . . . has any bearing on whether a surety is bound by a default judgment against its principal." Defendants are incorrect. Plaintiff cited this Court to numerous Georgia cases demonstrating that statutory bonding statutes must be strictly construed, and that bonds issued pursuant thereto cannot contain additional conditions that do not appear in the statute, *i.e.*, the read in/read out rule. Furthermore, applying these exact principles in *Howze,* the Texas Supreme Court specifically found the "silence" on the issue of notice to be central to its determination that "the surety is bound despite the fact that it was neither notified nor joined as a party." *Id.* at 265.

"judgment," just as Defendants argue here. *See id.* The Texas Supreme Court disagreed. The court stated:

> It is implicit that one establishes liability by obtaining a judgment in a court of competent jurisdiction. A consumer can only make a claim upon the surety when he has obtained a judgment against the principal, or when he sues them together in the same suit. These bonds, are therefore, Judgment bonds; and the surety is bound despite the fact that was neither notified nor joined as a party.

*Id.* at 265. Central to the court's analysis was the fact that the Texas legislature specifically created the statute to *not* require notice to the surety. Because the statute required payment on the bond once liability was established, and the statute specifically did not require that the surety have notice of the claim on the bond or be joined, the surety was conclusively bound by the default judgment entered against its principal.[4]

In this case, the language of the GRMA Bonding Statute and the Bond require payment under the Bond for "any monies due and owing ... any person due to a violation of the [GRMA]." It is axiomatic that one establishes that monies are due and owing to them based on a violation of the GRMA by a judgment to that

---

[4] While the *Howze* case was pending, the Texas Legislature specifically amended the bonding statute at issue to require notice of a claim on the bond to the surety. The Texas Supreme Court noted that cases "arising in the future will no doubt be governed by this statutory provision," the amendment, thus making clear that the language of the bonding statute, and the bond issued pursuant thereto, determines whether a default judgment against a principal is binding on a surety with no notice of the claim and who was not joined in the suit for damages under the bond.

effect. In other words, an injured party can only make a claim upon a surety under a bond issued under the GRMA after he has established that monies are due and owing to him by the principal (by way of a judgment against the principal), or when he sues the principal and surety in the same suit.

Here, Ms. Federer's September 2013 Complaint in the Gwinnett Action included specific references to each provision of the GRMA violated by AMEC including O.C.G.A. § 7-1-1013 (1), (2), (6), (7) and (8). *See* Plt's Stmt. Of Mat. Facts ¶ 4. Moreover, in reaching its decision, the Gwinnett Court granted the Order as to Liability "as if every item and paragraph in the [Gwinnett] Complaint was supported by proper evidence." *Id.* at 7. By virtue of the Order as to Liability, therefore, the Gwinnett Court judicially determined that proper evidence supported each and every violation of the GRMA by AMEC as alleged in the Gwinnett Complaint. *See Butler v. Home Furnishing Co.*, 163 Ga.App. 825, 825-26 (1982) (holding that under Georgia law "a default judgment is considered to be one 'on the merits.'"). Finally, following a hearing on the issue of damages, including the presentation of documentary evidence and expert testimony, the Gwinnett Court entered judgment against AMEC in the amount of $332,000, thus judicially determining that $332,000 was due and owing to Ms. Federer because of AMEC's violations of the GRMA. Accordingly, all conditions of the Bond have been

satisfied, and F&D is both statutorily and contractually required to pay out the full amount of the Bond it issued to AMEC, as a matter of law.[5]

## Conclusion

In closing, the facts here require nothing more than a straight-forward analysis of the GRMA, the prohibitions found therein at § 7-1-1013, and the bonding requirement imposed on mortgage brokers and lenders in the State of Georgia for the specific purpose of protecting innocent consumers, like Ms. Federer, who suffer damages as a result of a licensed mortgage lender's violation of the GRMA. Both the GRMA Bonding Statute, as well as the Bond itself, impose one condition on the principal, here AMEC: to pay all monies that become due and owing to any person damaged as a result of the principal's violation of the

---

[5] On page 15 of its responsive brief, Defendants cite this Court to the unpublished Eastern District of Missouri decision, *Lingo v. Hartford Fire Ins. Co.*, No. 4:10CV84MLM, 2011 WL 1642223 (E.D. Mo. May 2, 2011), asserting that the *Lingo* court analyzed a broker bond "containing nearly identical language to the GRMA," that the court there found "the mortgage broker bond was a performance bond, not a judgment bond," and that "the surety was not bound by a judgment obtained against the surety's principal in the separate action." Oddly enough, a review of the unpublished decision cited does not support Defendants' characterization. Indeed, the cited decision is devoid of any analysis of the statutory mandate for the bonds at issue, does not mention or reference the language of the statute or the bond at issue, does not even contain the phrases "judgment bond" or "performance bond" anywhere in the decision, and does not contain any analysis or holding that "the surety was <u>not</u> bound by a judgment obtained against the surety's principal in the separate action" as argued by Defendants.

GRMA. Succinctly put, Ms. Federer's Judgment against AMEC for monies due and owing to her because of AMEC's violation of the GRMA requires F&D to pay the full Bond amount to Ms. Federer's Estate, as a matter of law.

Respectfully submitted this 4th day of May, 2016.

ANDERSEN, TATE & CARR, P.C.

/s/ Elizabeth Clack-Freeman
R. Matthew Reeves
Georgia Bar No. 598808
mreeves@atclawfirm.com
Elizabeth Clack-Freeman
Georgia Bar No. 126888
lcfreeman@atclawfirm.com
Melody A. Glouton
Georgia Bar No. 297506
mglouton@atclawfirm.com
Attorneys for Plaintiff

One Sugarloaf Centre
1960 Satellite Blvd., Suite 4000
Duluth, Georgia 30097
770.822.0900
770.822.9680 fax

## **LR 7.1 D CERTIFICATION**

This is to certify that the within and foregoing has been prepared with one of the font and point selections approved by the Court in LR 5.1C: Times New Roman 14 point.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DAVID LAWRENCE FEDERER, AS EXECUTOR OF THE ESTATE OF CHRISTINA AUDREY FEDERER,<br><br>Plaintiff,<br><br>vs.<br><br>ZURICH AMERICAN INSURANCE COMPANY, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND<br><br>Defendants. | : CIVIL ACTION<br>: FILE NO. 1:15-CV-04204-TWT |

## CERTIFICATE OF SERVICE

This is to certify that I have this day presented the foregoing **Plaintiff's Reply Brief to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment** to the Clerk of Court for filing and uploading to the CM/ECF system, which will send notice to the counsel of record listed below:

Zack Anderson, Esq.
Mills Paskert Divers
One Atlantic Center
1201 West Peachtree Street
Suite 2610
Atlanta, Georgia 30309

Dated: May 4, 2016.

By: */s/ Elizabeth L. Clack-Freeman*
Elizabeth L. Clack-Freeman
State Bar No. 126888

2633550_1